FILED
2015 Mar-02  PM 01:57
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| JERRY WAYNE JOHNSON, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 6:14-cv-00704-LSC |
| | ) | |
| JAMES WHITMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## Memorandum of Opinion and Order

Plaintiff Jerry Wayne Johnson ("Johnson") brought this action under 42 U.S.C. § 1983. Johnson alleges that Defendants violated his Eighth Amendment rights when Defendants were deliberately indifferent in providing medical treatment for a broken wrist Johnson suffered while incarcerated at the Winston County Jail. Johnson also brings a state law claim for negligence. Before the Court is Defendants George A. Lyrene, M.D. ("Lyrene"), Denise Cummings, ("Cummings"), Amber Thompson ("Thompson"), and Adam Whitehead's ("Whitehead") motion to dismiss Johnson's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil

Procedure.[1] (Doc. 27.) The issues have been fully briefed by the parties and are ripe for review.

## I.   FACTUAL BACKGROUND[2]

Johnson was incarcerated at the Winston County Jail ("Jail") in the summer of 2013. Defendant Lyrene was a physician employed by Correctional Managed Care Consultants, LLC ("CMCC"), and served as director of the medical program at the Jail. Defendants Cummings, Thompson, and Whitehead were also employed by CMCC, and provided nursing services for Jail inmates.

On July 8, 2013, Johnson fractured his right wrist while an inmate at the Jail. On July 12, 2013, Cummings examined Johnson's wrist. She noted bruising and swelling, and treated the wrist injury with an ice pack. After Johnson told Cummings that he believed the wrist to be broken, Cummings indicated that she would refer Johnson to another nurse the next day to see if he needed x-rays. On July 13, 2013, Thompson examined Johnson's wrist. Johnson indicated that he experienced pain when trying to move the wrist, and Thompson prescribed naproxen and acetaminophen for pain. Thompson discussed Johnson's wrist with Dr. Lyrene, but no x-rays were ordered at

---

[1] Defendants James Whitman and Rick Harris have not joined in this motion.

[2] In ruling on a motion to dismiss, this Court must accept the plaintiff's factual allegations as true and construe them in his favor. *See Baloco ex rel. Tapia v. Drummond Co.*, 640 F.3d 1338, 1345 (11th Cir. 2011) (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010)).

the time. On July 18, 2013, Thompson saw Johnson again for an unrelated medical condition. Johnson's injured wrist was not discussed during this visit.

On August 29, 2013, Lyrene personally examined Johnson's wrist due to Johnson's continued complaints. Lyrene ordered x-rays to be taken. On September 11, 2013, Johnson was taken to an off-site hospital where he had his wrist x-rayed. On September 18, 2013, Dr. Lyrene again examined Johnson's wrist. Lyrene diagnosed Johnson with a fractured wrist and indicated that he would discuss Johnson's condition with an orthopedist. Lyrene saw Johnson again in October 2013 for a leg issue. During this visit, Lyrene noted that Johnson's right wrist did not flex or grip normally. However, Lyrene did not prescribe any additional treatment for the wrist injury at that time.

On November 13, 2013, Johnson was again examined by Dr. Lyrene for his wrist fracture. Johnson indicated that the wrist injury was still painful, and asked whether surgery was an option. Lyrene told Johnson that, after reviewing the x-rays with the orthopedist, he had determined that it was "too late" for surgery. Johnson's fracture ultimately healed in an malunion position. Johnson was released from the Jail in March of 2014, and had surgery to repair the malunion in his right wrist in May of 2014.

Johnson filed his complaint in this Court on April 16, 2014. Johnson amended his complaint on October 29, 2014 to include claims against the Lyrene, Cummings, Thompson, and Whitman. Johnson's § 1983 claim is based on an alleged Eighth Amendment violation, as Johnson asserts that Defendants were deliberately indifferent to his medical needs. Johnson also brings a claim for negligence/wantonness against Lyrene, Thompson, Cummings, and Whitehead.

## II.  STANDARD OF REVIEW

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the facts alleged in the complaint must be specific enough that the claim raised is "plausible." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is *plausible on its face*.") (internal quotations omitted) (emphasis added). "To be plausible on its face, the claim must contain enough facts that 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Pouyeh v. Univ. of Ala. Dep't of Ophthamology*, No. CV-12-BE-4198-S, 2014 WL 2740314, at *3 (N.D. Ala. June 16, 2014) (quoting *Iqbal*, 556 U.S. at 678) (alteration in original). Conclusory statements

of law may "provide the framework of a complaint," but the plaintiff is required to support them with "factual allegations." *Iqbal*, 556 U.S. at 679.

The process for evaluating the sufficiency of a complaint has two steps. This Court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Conclusory statements and recitations of a claim's elements are thus disregarded for purposes of determining whether a plaintiff is entitled to access discovery. *See Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) (citing *Iqbal*, 556 U.S. at 687). Next, this Court "assume[s] [the] veracity" of "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A complaint's factual matter need not be detailed, but it "must . . . raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In reviewing the complaint, this Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Nonetheless, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable." *Twombly*, 550 U.S. at 556. This Court considers only "the face of the complaint and attachments thereto" in order to determine whether Plaintiff states a claim for relief. *Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243,

1252 n.13 (11th Cir. 2013). Generally, the complaint should include "enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory.'" *Am. Fed'n of Labor & Cong. of Indus. Orgs v. City of Miami, Fla.*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683-84 (11th Cir. 2001)).

## III. Analysis

### A.   Deliberate Indifference to a Serious Medical Need

The United States Supreme Court has held that it is only deliberate indifference to serious medical needs that is actionable under 42 U.S.C. § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To recover under this cause of action, a plaintiff must establish (1) a serious medical condition; (2) prison officials' deliberate indifference to that condition; and (3) the prison officials' personal participation in the alleged constitutional violation, or some other means of establishing causation with respect to each individual defendant. *See Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Defendants do not dispute that a fractured wrist can be a "serious" medical condition, leaving this Court to consider only whether the individual Defendants' alleged conduct amounts to deliberate indifference.

Deliberate indifference can be shown in a variety of ways. As the Eleventh Circuit Court of Appeals noted:

> Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference. Medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference. Additionally, when the need for medical care is obvious, medical care that is so cursory as to amount to no treatment at all may constitute deliberate indifference.

*Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) (internal citations omitted).

Furthermore, an official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening or urgent condition that would be exacerbated by the delay. *See Hill v. Dekalb Cnty. Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1186–87 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002). Delay in access to medical treatment can violate the Eighth Amendment when it is "tantamount to unnecessary and wanton infliction of pain." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted).

However, mere negligence is insufficient to support a constitutional claim. *See Fiedler v. Bossard*, 590 F.2d 105, 107 (5th Cir. 1979). Moreover, an accidental failure to provide medical care, or negligent diagnosis or treatment of a medical condition,

will not sustain a claim for an Eighth Amendment violation. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *see also Estelle*, 429 U.S. at 106 (stating that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). Finally, a mere difference of opinion between inmate and medical staff as to the type of treatment to be administered does not give rise to a cause of action under the Eighth Amendment. *See Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976); *see also Estelle*, 429 U.S. at 106–08.

Johnson argues that Defendants acted with deliberate indifference when they delayed ordering an x-ray on his wrist, and later when they denied Johnson surgery for the injury. The complaint shows that medical staff examined Johnson's wrist seven times between July 12, 2013 and November 13, 2013. Upon first presenting his injured wrist to medical staff, Johnson was given an ice pack for swelling and informed by Cummings that another member of the medical staff would evaluate his wrist to determine if x-rays were needed. The next day, Defendant Thompson examined his wrist, noting pain upon motion and prescribing Johnson two different pain relievers.[3] Thompson proceeded to confer with Dr. Lyrene about whether an x-ray was

---

[3] While Johnson argues that the pain medication was administered for another medical condition (arthritis), the facts as pled nonetheless show that Johnson was prescribed pain medication following a medical examination during which Johnson complained about pain in his wrist.

necessary. While Dr. Lyrene initially did not order an x-ray, he personally examined Johnson's wrist and had an x-ray promptly administered following Johnson's continued complaints of pain. After receiving the x-ray results, Dr. Lyrene conferred with an orthopedic specialist concerning the proper course of treatment.

Put simply, the pleaded facts do not show that Johnson's complaints about his wrist were ignored by Defendants to the extent that their actions could be considered to constitute deliberate indifference. While Johnson may take issue with the roughly eight-week delay between when he first presented his wrist injury to medical staff and when x-rays were ordered, Johnson nonetheless received medical treatment during that time frame. Furthermore, Johnson has pled no facts—other than a conclusory statement that "even a layperson" could tell that his wrist was broken—to suggest that Defendants had subjective knowledge that an x-ray was needed.[4] *See Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (stating that a defendant must have actual knowledge of a serious condition, rather than just knowledge of that condition's symptoms, and ignore the risk of that condition to support a claim for deliberate

---

[4] Furthermore, while Johnson has alleged that he told Cummings during his first examination that he believed his hand to be broken, he also alleges that Cummings immediately referred Johnson to another member of the medical staff to determine whether an x-ray was needed. In other words, Johnson's own allegations show that Cummings responded promptly to his complaint, and the mere fact that Cummings may have subjective knowledge cannot be used to impute knowledge to the other Defendants. *See Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010).

indifference). Thus, this case can be easily distinguished from cases where medical officials had subjective knowledge of the plaintiff's serious medical condition, and nonetheless denied plaintiff access to diagnostic tests that even the medical staff believed to be necessary for proper treatment of the plaintiff's condition. *Cf. Antaca v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985)(finding that a plaintiff had sufficiently alleged a deliberate indifference claim when plaintiff pled facts showing that defendants knew that a medical diagnostic test was necessary, but refused to administer it despite plaintiff's repeated requests).

Johnson further argues that his wrist injury should have been treated with surgery. He asserts that, had the broken wrist been surgically reset, it likely would not have healed in a malunion. Such an assertion might serve as the basis for a negligence or medical malpractice claim, but it will not support a claim for an Eighth Amendment violation. *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994) (stating that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment [i.e., deliberate indifference to a serious medical need]"). Furthermore, the fact that Johnson would have preferred a specific course of treatment does not state a constitutional claim. *See Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)

(stating that "a simple difference of medical in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis [does not] support a claim of cruel and unusual punishment"). Indeed, this Court has previously decided, albeit at the summary judgment stage, that a prisoner's preference for surgical treatment cannot alone sustain a deliberate indifference claim. *See Maxwell v. CHS Prison Med.*, No. 4:11-cv-03631-LSC-RRA, 2013 WL 1180380 (N.D. Ala. Mar. 19, 2013) (deciding that prison medical staff were not deliberately indifferent when they employed a conservative treatment regimen of pain medication and continued observation for a patient's bulging back discs and shoulder pain, despite the plaintiff's insistence on having surgical treatment instead).

Finally, with the exception of Dr. Lyrene, Johnson fails to even allege significant personal involvement on behalf of any of the Defendants. *See Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995) (stating in the context of a deliberate indifference claim that plaintiff was "required to show that [defendants] were personally involved in acts or omissions that resulted in the constitutional deprivation"). Cummings is alleged merely to have referred Johnson to another member of the staff to determine whether x-rays were needed, while Thompson is alleged merely to have administered pain medication and consulted with Dr. Lyrene, her supervisor, concerning Johnson's

injured wrist. Finally—and most notably—Defendant Whitehead is not alleged to have had *any* involvement in treating or diagnosing Johnson's wrist.

In sum, Johnson fails to plead facts showing that Defendants were deliberately indifferent with respect to his fractured wrist. However, since this is the first time that claims against these Defendants have been challenged on a motion to dismiss, the Court will allow Johnson an opportunity to amend his complaint. *See Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (stating that "[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice"). Though the Court questions whether amending the complaint would be futile, it nonetheless will grant Johnson an opportunity to amend his complaint.

### B.    Negligence/Wantonness Claim

There is no independent basis for federal jurisdiction over Johnson's negligence/wantonness claim, and thus the Court must determine whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367 (2012). Section 1367 "reflects a dichotomy between a district court's power to exercise supplemental jurisdiction, § 1367(a), and its discretion not to exercise such jurisdiction, § 1367(c)." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742 (11th Cir. 2006). While this court has

the power to decide state law claims that form "part of the same case or controversy" as the federal anchor claim, the Court may decline to do so if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (2012).

Johnson's complaint currently fails to state a federal claim that can survive a Rule 12(b)(6) motion to dismiss. If Johnson does not amend his complaint to state a plausible federal cause of action, this Court will dismiss Johnson's negligence/wantonness claim without prejudice so he can it in an appropriate state court. *See* 28 U.S.C. § 1367(c)(3); *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state law claims when, as here, the federal claims have been dismissed prior to trial.").

## IV.  CONCLUSION

For the foregoing reasons, The Court will permit Johnson to file an amended complaint within ten (10) days of the date of this Memorandum of Opinion and Order. If Johnson files an amended complaint, the Court will consider the motion to dismiss

moot, and Defendants Lyrene, Cummings, Thompson, and Whitehead will be free to determine whether it would be appropriate to file a motion to dismiss the second-amended complaint. However, if Johnson does not file an amended complaint, the Court will grant the current motion to dismiss (Doc. 27), dismissing the § 1983 claim with prejudice and the state law claim without prejudice.

Done this 2nd day of March 2015.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
177822