FILED

2015 May-26  PM 04:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| JERRY WAYNE JOHNSON, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 6:14-cv-00704-LSC |
| | ) | |
| JAMES WHITMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

**Memorandum of Opinion**

Plaintiff Jerry Wayne Johnson ("Johnson") brought this action under 42 U.S.C. § 1983. Johnson alleges that Defendants violated his Eighth Amendment rights when they were deliberately indifferent in providing medical treatment for a broken wrist Johnson suffered while incarcerated at the Winston County Jail. Johnson also brings a state law claim for negligence. Before the Court is Defendants George A. Lyrene, M.D. ("Lyrene"), Denise Cummings, ("Cummings"), Amber Thompson ("Thompson"), and Adam Whitehead's ("Whitehead") motion to dismiss Johnson's second amended complaint for failure to state a claim. (Doc. 40.) Also before the

Court is Defendants James Whitman ("Whitman") and Rick Harris's ("Harris") motion to dismiss for failure to state a claim. (Doc. 44.) Whitman and Harris also raise the defense of qualified immunity.

The issues have been fully briefed by the parties and are ripe for review. For the reasons set out below, Defendants' motions to dismiss are due to be granted.

## I.   Factual Background[1]

Johnson was incarcerated at the Winston County Jail ("Jail") in the summer of 2013. Defendant Harris was the Sheriff of Winston County, Alabama, during all times relevant to this suit, while Defendant Whitman was employed as a corrections officer at the Jail. Correctional Managed Care Consultants, LLC ("CMCC") was a private corporation that the County contracted with to provide medical care to prisoners at the Jail. Defendant Lyrene, a physician employed by CMCC, served as director of the medical program at the Jail. Defendants Cummings, Thompson, and Whitehead were also employed by CMCC, and provided nursing services for Jail inmates. CMCC was paid a flat fee of $5000.00 a month for providing medical services to inmates at the Jail.

---

[1] In ruling on a motion to dismiss, this Court must accept the plaintiff's factual allegations as true and construe them in his favor. *See Baloco ex rel. Tapia v. Drummond Co.*, 640 F.3d 1338, 1345 (11th Cir. 2011) (citing *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010)).

On July 8, 2013, Johnson fractured his right wrist while an inmate at the Jail. On July 12, 2013, Cummings examined Johnson's wrist. She noted bruising and swelling, and treated the wrist injury with an ice pack. Though Johnson told Cummings that he believed the wrist to be broken, Cummings took no further action at that time.[2] On July 13, 2013, Defendant Thompson examined Johnson's wrist. Johnson indicated that he experienced pain when trying to move the wrist, and Thompson prescribed naproxen and acetaminophen for pain.[3] Thompson discussed Johnson's wrist with Dr. Lyrene, but no x-rays were ordered at the time. On July 18, 2013, Thompson saw Johnson again for an unrelated medical condition. Johnson's injured wrist was not discussed during this visit.

On August 29, 2013, Lyrene personally examined Johnson's wrist due to Johnson's continued complaints. Lyrene ordered x-rays to be taken. However, Dr. Lyrene noted at the time that, while he would look at the x-ray results, any damage to Johnson's wrist was likely already chronic. *See* Doc. 37, at ¶ 5. On September 11, 2013, Johnson was taken to an off-site hospital where he had his wrist x-rayed. On

---

[2] The previous complaint alleged that Cummings referred Johnson to another member of medical staff to further examine the injury. Johnson has removed this allegation from the second amended complaint.

[3] Johnson argues that this pain medication was in fact prescribed for another, unrelated condition. However, the facts as pled indicate that Johnson was prescribed pain medication following a medical exam during which Johnson complained about pain in his wrist.

September 18, 2013, Dr. Lyrene again examined Johnson's wrist. Reviewing Johnson's x-rays, Lyrene diagnosed Johnson with a fractured wrist and indicated that he would discuss Johnson's condition with an orthopedist. On October 17, 2013, Lyrene saw Johnson again for a leg issue. During this visit, Lyrene noted that Johnson's right wrist did not flex or grip normally. However, Lyrene did not prescribe any additional treatment for the wrist injury at that time.

On November 13, 2013, Johnson was again examined by Dr. Lyrene for his wrist fracture. Johnson indicated that the wrist injury was still painful, and asked whether surgery was an option. Lyrene told Johnson that, after reviewing the x-rays with the orthopedist, he had determined that it was "too late" for surgery. Johnson's fracture ultimately healed in an malunion position. Johnson was released from the Jail in March of 2014, and had surgery to repair the malunion in his right wrist in May of 2014.

Johnson filed his complaint in this Court on April 16, 2014. Johnson originally brought claims against only Whitman and Harris, but amended his complaint on October 29, 2014 to include claims against the Lyrene, Cummings, Thompson, Whitman, and CMCC. Defendants Lyrene, Cummings, Thompson, Whitman, and CMCC filed a motion to dismiss the amended complaint. On March 2, 2015, this

Court issued an order and memorandum of opinion finding that Johnson's first amended complaint failed to state a claim for deliberate indifference against the medical Defendants. The Court gave Johnson leave to amend his complaint with respect to the claims against CMCC and the medical staff.

Johnson filed his second amended complaint on March 12, 2015. Johnson has conceded that claims against Defendant Whitehead are due to be dismissed, but maintains that the other medical Defendants violated his Eight Amendment rights when they were deliberately indifferent in treating his broken wrist. Johnson also asserts supervisory liability claims against Defendants Harris, Whitman, and Lyrene. Lastly, Johnson brings state-law claims against CMCC, Lyrene, Cummings, and Thompson for negligence/wantonness.

The CMCC Defendants filed a motion to dismiss on March 22, 2015, and Defendants Harris and Whitman filed a motion to dismiss on March 26, 2015. Harris and Whitman also assert the defense of qualified immunity.

## II.   Standard of Review

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the facts alleged in the complaint must be specific enough that the

claim raised is "plausible." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is *plausible on its face*.") (internal quotations omitted) (emphasis added). "To be plausible on its face, the claim must contain enough facts that 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Pouyeh v. Univ. of Ala. Dep't of Ophthamology*, No. CV-12-BE-4198-S, 2014 WL 2740314, at *3 (N.D. Ala. June 16, 2014) (quoting *Iqbal*, 556 U.S. at 678) (alteration in original). Conclusory statements of law may "provide the framework of a complaint," but the plaintiff is required to support them with "factual allegations." *Iqbal*, 556 U.S. at 679.

The process for evaluating the sufficiency of a complaint has two steps. This Court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Conclusory statements and recitations of a claim's elements are thus disregarded for purposes of determining whether a plaintiff is entitled to access discovery. *See Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010) (citing *Iqbal*, 556 U.S. at 687). Next, this Court "assume[s] [the] veracity" of "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A complaint's

factual matter need not be detailed, but it "must . . . raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In reviewing the complaint, this Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Nonetheless, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable." *Twombly*, 550 U.S. at 556. This Court considers only "the face of the complaint and attachments thereto" in order to determine whether Plaintiff states a claim for relief. *Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1252 n.13 (11th Cir. 2013). Generally, the complaint should include "enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory.'" *Am. Fed'n of Labor & Cong. of Indus. Orgs v. City of Miami, Fla.*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683-84 (11th Cir. 2001)).

## III. ANALYSIS

### A.    Deliberate Indifference Claims

The United States Supreme Court has held that it is only *deliberate* indifference to serious medical needs that is actionable under 42 U.S.C. § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To recover under this cause of action, a plaintiff

must establish (1) a serious medical condition that poses a substantial risk of harm if left unattended; and (2) prison officials' deliberate indifference to that condition. *See Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011). Defendants do not dispute that a fractured wrist can be a "serious" medical condition, leaving this Court to consider only whether the individual Defendants' alleged conduct amounts to deliberate indifference.

To satisfy the requirement of deliberate indifference, a plaintiff must show that prison officials (1) had subjective knowledge of a risk of serious harm; and (2) demonstrated *intentional* disregard of that risk. *See id.* at 1175–76. Delay in access to medical treatment can violate the Eighth Amendment when it is "tantamount to unnecessary and wanton infliction of pain." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted). Furthermore, "when the need for medical care is obvious, medical care that is so cursory as to amount to no treatment at all may constitute deliberate indifference." *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) (internal citations omitted). However, an accidental failure to provide medical care, or negligent diagnosis or treatment of a medical condition, will not sustain a claim for an Eighth Amendment violation. *See Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *see also Estelle*, 429 U.S. at 106 (stating that

"[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"). Finally, a mere difference of opinion between inmate and medical staff as to the type of treatment to be administered does not give rise to a cause of action under the Eighth Amendment. *See Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976); *see also Estelle*, 429 U.S. at 106–08.

Johnson argues that the Defendants acted with deliberate indifference when they delayed ordering an x-ray of his wrist, and later when they denied Johnson surgery for the injury. In its previous order, this Court emphasized that, as pled, Johnson's deliberate indifference claims—essentially alleging that the Defendants failed to a conduct a timely x-ray of Johnson's injured wrist, consequently missing an opportunity to prevent the fractured wrist from healing in a malunion position—sounded more in negligence law than in constitutional law. In addition, the Court noted that Johnson's assertions that he should have received surgery once his injury was diagnosed was a dispute concerning course of treatment, which is generally not actionable under the Eighth Amendment.

### 1.   *Deliberate Indifference Claim Against Lyrene*

Johnson's second amended complaint does not correct the previous complaint's deficiencies. First Johnson's second amended complaint still fails to show

that Defendant Lyrene had subjective knowledge that an x-ray was needed to diagnose or prevent a malunion. The complaint contains only one meaningful additional allegation with respect to Dr. Lyrene's conduct, as Johnson now alleges that, *after* examining Johnson's wrist personally on August 29th and agreeing to administer an x-ray, Dr. Lyrene acknowledged the likelihood that "any changes [to Johnson's wrist] at this point were likely to be chronic." See Doc. 37, at ¶ 16. Such an allegation does nothing to indicate that, prior to personally examining Johnson's wrist, Dr. Lyrene was aware an x-ray was a medically necessary procedure. In fact, the complaint itself suggests that Dr. Lyrene had ample reason to believe that the pain medication given on July 13th, 2013 was an effective treatment of Johnson's symptoms while his wrist healed, since Johnson admits that he did not raise his wrist injury as a concern when he visited the medical ward for an unrelated complaint on July 18, 2013. *See* Doc. 37 at ¶ 15.

As with the previous complaint, the second amended complaint presents allegations that essentially amount to a disagreement over the correct course of treatment. Johnson admits that he was seen by medical staff for his wrist at least seven times between July 12, 2013, and November 13, 2013. Johnson's injury was first treated with an ice pack and pain medication. Following Johnson's renewed

complaints, an x-ray was administered and Dr. Lyrene conferred with an off-site orthopedist concerning the possibility of surgery.  Simply put, nowhere does the complaint suggest that medical staff disregarded Johnson's injury to such an extent that their conduct could be considered "unnecessary and wanton infliction of pain." *See Brown*, 894 F.2d at 1537.

However, Johnson asserts that, once medical staff was made aware of the pain and restricted motion in his injured wrist, an x-ray should have been administered without delay. In other words, Johnson does not allege a total disregard for his wrist injury, but instead takes issue with the conservative course of treatment chosen. Such disagreements are not actionable under the Eighth Amendment. *See Estelle*, 429 U.S. 97, 107 (1976). Indeed, *Estelle* is instructive in the present case. In *Estelle*, the plaintiff injured his back during a prison work assignment. Prison medical staff declined to perform an x-ray of the plaintiff's injured back, and instead opted for a course of treatment that consisted of pain medication and bed rest. *Id*. After three months of this conservative treatment, the plaintiff filed a deliberate indifference claim. The plaintiff argued in part that medical staff's failure to perform an x-ray or other diagnostic techniques, despite the plaintiff's continued complaints of pain, constituted cruel and unusual punishment. While the district court dismissed plaintiff's claims,

the Court of Appeals reversed, stating in part that the plaintiff's assertions concerning the doctors' failure to perform an x-ray was conduct sufficient to support a deliberate indifference claim.

However, the Supreme Court decided that the Court of Appeals erred in finding that the plaintiff's allegations stated a claim for deliberate indifference. In making this determination, the Supreme Court stated that:

> [Plaintiff's] complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury." . . . [Plaintiff] contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. The Court of Appeals agreed, stating that "Certainly an x-ray of [Plaintiff's] lower back might have been in order and other tests conducted that would have led to appropriate diagnosis for the daily pain and suffering he was experiencing." But the question of whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter of medical judgment. A medical decision not to order an x-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . . .

*Id.* (internal citations omitted); *see also McCall v. Cook*, 495 F. App'x 29, 30 (11th Cir. 2012)(finding, albeit at the summary judgment stage, that the defendant doctor was not deliberately indifferent to a prisoner's back and hip pain when the doctor prescribed pain medicine but refused to order an x-ray, even though a serious medical condition was later discovered after tests were run at a different facility).

Similar to the treatment decisions made in *Estelle*, Dr. Lyrene's decision to delay in ordering an x-ray after Johnson first presented his wrist injury to CMCC staff was an issue of medical judgment and therefore is not actionable under the Eighth Amendment. While Johnson may be correct in asserting that CMCC staff could have prevented Johnson's fractured wrist from healing in a malunion had an x-ray been ordered sooner, such allegations are insufficient to establish a deliberate indifference claim. *See Farmer v. Brennan*, 511 U.S. 825, 838 (1994) (stating that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment [i.e., deliberate indifference to a serious medical need]").

Johnson also alleges that, once the malunion was discovered following the x-ray, Lyrene's refusal to approve surgery to reset the poorly healed break in Johnson's wrist constituted deliberate indifference. Again, Johnson's allegations attempt to turn an issue of medical judgment into grounds for an Eighth Amendment violation. According to the Johnson's own allegations, Dr. Lyrene conferred with an off-site orthopedist concerning the proper course of treatment, but ultimately felt that it was "too late" for surgery. Furthermore, the allegation that another physician performed surgery on Johnson's wrist following Johnson's release from the Jail shows only that

a difference of opinion existed between two physicians; it does nothing to suggest that Lyrene's refusal to perform surgery constituted deliberate indifference. *See Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (stating that neither malpractice nor a "simple difference in medical opinion" is sufficient to show deliberate indifference).

Furthermore, Johnson's conclusory allegations that the medical Defendants' decisions were motivated by a concern to reduce healthcare costs will not act to make an otherwise insufficient deliberate indifference claim actionable. *See Ancata v. Prison Health Servs.*, 769 F.2d 700, 704–05 (11th Cir. 1985) (stating only that medical personal cannot refuse treatment that they *know to be necessary* due to non-medical considerations); *see also Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997) (stating that "the deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society"); *Winslow v. Prison Health Servs.*, 406 F. App'x 671, 675 (3d Cir. 2011) (dismissing at the 12(b)(6) stage a deliberate indifference claim based on prison medical staff's refusal to treat the plaintiff's hernia with surgery, and noting that the plaintiff's allegation that the course of treatment was "motivated by non-medical factors, principally cost," was insufficient to save his claim).

### 2.    *Deliberate Indifference Claims Against Thompson and Cummings*

Johnson's complaint also remains deficient with respect to the claims brought against Cummings and Thompson. As with the previous complaint, Defendant Thompson is alleged merely to have examined Johnson's wrist, administered pain medication, and consulted with Dr. Lyrene, her supervisor, concerning whether an x-ray was necessary. Again, such actions show that Thompson was responsive to Johnson's complaints, and that her conduct fell well short of what is required to sustain a deliberate indifference claim.

Similarly, Johnson still fails to state a claim with respect to Defendant Cummings. Cummings was the first nurse to examine Johnson's wrist. Johnson described his symptoms to Cummings and told her that he believed his hand to be broken. In the previous complaint, Johnson alleged that, after hearing this information, Cummings gave Johnson an ice pack to apply to his wrist and referred Johnson to another member of the medical staff to determine whether x-rays were needed. In finding that Johnson failed to state a claim against Cummings, this Court stated that "Johnson's own allegations show that Cummings responded promptly to [Johnson's] complaint, and the mere fact that Cummings may have had subjective

knowledge [of Johnson's broken wrist] cannot be used to impute knowledge to the other Defendants." *See* Doc. 36, at 9 n.4 (citations omitted).

In an effort to avoid dismissal of his deliberate indifference claim against Cummings, Johnson has removed the allegation that Cummings referred Johnson to another member of the medical staff to conduct further examination of his wrist. In doing so, Johnson's complaint essentially alleges that, other than administering an ice pack, Cummings took no action to address Johnson's injured wrist. However, the current complaint still alleges that Johnson was seen by Nurse Thompson for a follow-up examination the day after his initial examination with Cummings, and that, following this second examination, Johnson's condition was discussed with Dr. Lyrene. In other words, Johnson's own complaint shows that Cummings's inaction did not result in any significant harm to Johnson, as his complaints were nonetheless brought to Dr. Lyrene for review in a timely manner. *See Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993) (stating that an Eighth Amendment violation occurs only when there has been "deliberate indifference *that results in* substantial harm" (emphasis added)); *see also Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (stating that, "as with any tort claim, [a plaintiff in a deliberate indifference action] must show that the injury was caused by the defendant's wrongful conduct").

Finally, the Court notes that, even assuming that an x-ray was a necessary procedure—and that failure to administer an x-ray was an act of deliberate indifference—Johnson has pled no facts showing that either Cummings or Thompson *in particular* had any authority concerning whether to administer such diagnostic tests over the objections of their supervisor, Dr. Lyrene. *See Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995) (stating in the context of a deliberate indifference claim that a plaintiff must allege facts showing that defendants were "*personally involved* in acts or omissions that resulted in the constitutional deprivation" (emphasis added)).

### 3. *Supervisory § 1983 Claims Against Harris, Whitman, and Lyrene*

Johnson's deliberate indifference claims against Harris and Whitman are not based on any personal interaction. Instead, Johnson alleges that Harris and Whitman, acting as Jail supervisors, encouraged a policy or custom of delaying or refusing certain courses of treatment in an effort to save money. The supervisory claim against Lyrene apparently stems from his alleged involvement in carrying out this policy of considering costs when devising courses of treatment for inmates at the Jail.

An official may be liable in a supervisory capacity under § 1983 when there is a causal connection between his subordinates' unconstitutional conduct and the

official's own actions. *Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1236 (11th Cir. 2010). Other than personal participation on behalf of the defendant, the plaintiff may establish the necessary causal connection by showing (1) that there was "a history of widespread abuse," thereby putting the supervisor on notice of the constitutional violation; (2) that the supervisor imposed "a custom or policy . . . resulting in deliberate indifference to constitutional rights"; or (3) that the supervisor "directed the subordinates to act unlawfully or knew [they] would act unlawfully and failed to stop them from doing so." *See id.* (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360–61 (11th Cir. 2003)).

Johnson's supervisory liability claims against Whitman, Harris, and Lyrene fail for the simple reason that Johnson has not shown that he suffered a constitutional violation at the hands of the CMCC medical staff. Supervisory liability under § 1983 provides a means for the plaintiff to impose liability on a supervisory official if the plaintiff can establish that the supervisory official's actions contributed towards a constitutional violation. As a result, a prerequisite for establishing a § 1983 claim based on an allegedly unconstitutional policy or custom is a showing that the policy actually resulted in a violation of the plaintiff's constitutional rights. *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) (stating in the context of a municipal liability claim

that "an inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred").

In sum, Johnson has failed to plead facts showing that he suffered a violation of his Eighth Amendment rights. As a result, Johnson has no basis for asserting that the Defendants' allegedly unconstitutional "policy or custom" caused him constitutional injury.

### 4.   *Qualified Immunity*

Defendants Whitman and Harris have raised the defense of qualified immunity. An official acting within the scope of his employment is "shielded from suit against him in his individual capacity if, while performing a discretionary function, his conduct did not violate a clearly established right of which a reasonable person would have known." *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695 F.3d 1194, 1198 (11th Cir. 2012) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Having decided that Johnson has failed to state a constitutional violation against either Harris or Whitman, this Court need not consider whether the constitutional right in question was "clearly established" to hold that Whitman and Harris are entitled to qualified immunity.

However, even if a constitutional violation were to have occurred, neither Harris nor Whitman could have been on notice that the medical care provided to

Johnson was so grossly inadequate as to amount to no treatment at all. *See Williams v. Limestone Cnty., Ala.*, 198 F. App'x 893, 898 (11th Cir. 2006) (stating that supervisory, non-medical prison officials are generally "entitled to rely on medical judgments made by medical professionals responsible for prisoner care"). Finally, Johnson's allegations that costs were considered when making treatment decisions does nothing to turn otherwise constitutionally permissible conduct into a constitutional violation. Even if such allegations were to establish a potential supervisory claim, it would fall well short of a violation of "clearly established" law in this circuit. *See Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1312 (11th Cir. 2011) (stating in dicta that it was "a highly questionable assumption" that a policy of using the least costly means to treat prisoners would, on its own, establish a claim for deliberate indifference).

### B.      Negligence/Wantonness Claim

There is no independent basis for federal jurisdiction over Johnson's negligence/wantonness claims, and thus the Court must determine whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367 (2012). Section 1367 "reflects a dichotomy between a district court's power to exercise supplemental jurisdiction, § 1367(a), and its discretion not to exercise such jurisdiction, § 1367(c)."

*Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742 (11th Cir. 2006). While this court has the power to decide state law claims that form "part of the same case or controversy" as the federal anchor claim, the Court may decline to do so if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

While Johnson may potentially have viable malpractice claims against the CMCC Defendants, his complaint fails to state a federal claim that can survive a Rule 12(b)(6) motion to dismiss. Consequently, this Court will dismiss Johnson's negligence/wantonness claims without prejudice so he can pursue them in state court if appropriate. *See* 28 U.S.C. § 1367(c)(3); *see also Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state law claims when, as here, the federal claims have been dismissed prior to trial.").

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Docs. 40, 44) are due to be granted. Johnson's deliberate indifference claims are due to be dismissed with prejudice. Johnson's state law claims are due to be dismissed without prejudice.

Done this <u>26th</u> day of <u>May 2015.</u>

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
177822